Good morning. Good morning. May it please the Court, my name is Ryan Norwood and I represent Mr. Tarango. I'd like to reserve about a minute of my time for rebuttal. The State failed to convince Tarango's jury that he was guilty. A verdict was nonetheless entered against him because one of the jurors changed his vote, not because of the evidence, not because of anything that happened in the deliberations, but because he was intimidated by an out-of-court encounter with a police car. The Sixth Amendment right to an impartial jury was violated in this case and it was unreasonable for the State courts to conclude otherwise. There are two clearly established rules that I discuss in my briefing, either one of which should have compelled relief given the facts in this case. The first is the REMER standard for contacts that are presumptively prejudicial. Those concern private communications, contact, or tampering, direct or indirect, about a matter pending for the jury. There is a suggestion throughout the State court opinions in the State's briefing that what the juror is describing here is speculative or some coincidental encounter with a police car, and that's absolutely not what he's saying at the State court evidentiary hearing. What he's plainly describing is a police car that was deliberately following him for a distance of over seven miles while he was traveling to the court for the last day of deliberations. When he changed lanes, this police car changed lanes with him. When other cars were trying to get in between them, the police car moved closer. The car was so close that he couldn't see its bumper. And they weren't stuck in traffic, either. He repeatedly states in the testimony that he was traveling at the speed limit on this highway. So, counsel, all of this evidence was presented to the trial court, right? The problem So the issue we must decide is whether or not the State court's decision was contrary to or an unreasonable application of the law. So tell us why the State court decision was contrary to or an unreasonable application of Supreme Court law. Well, the first problem is that the State court isn't applying the correct Federal standards here. It's not applying the Remmer standard to this. It's applying a much narrower standard about whether or not this is an improper external communication. I mean, even if it doesn't Remmer is much broader than that. But does the State court have to, as long as the State court reaches the correct result, does it matter how it got there? Yes. As long as its reasoning is not contrary to Supreme Court authority, do we go back and dissect the analysis of the court? Yes, we do. So what case says that even if the decision is not contrary to a Supreme Court decision, we look behind that to the analysis and determine whether that was erroneous? What Supreme Court case tells us to do that? Well, what I'm saying here is that this analysis is contrary to clearly established Federal law. There are these clearly established standards that have to be applied to resolve a claim like this, and the Nevada Supreme Court just isn't applying them. They're not applying the Remmer standard. And I don't want to get hung up on Remmer, because even if we agree that this isn't, you know, the sort of thing that falls within Remmer, even if that could be reasonably decided, it's clear that if there is an extraneous influence, you know, the court still needs to determine if it actually biased the jury's verdict. Smith v. Phillips says you have to conduct this inquiry into the circumstances of what happened. And so you're, you're, I think I understand what you're saying. You're saying that what the trial court did was treat this as an internal communication versus an external contact. I think that's part of the problem. I think what's happening here is Nevada, you're correct that there is this common law rule about internal communications, but there is a longstanding exception for what the Supreme Court in Canada calls extraneous influence. Right. Or extraneous external contact. Okay. So the question here is, was this or was this not external influence of this juror? And what I'm saying, was this, I mean, the police car following him for, was it seven miles on the highway until he turned off to the courthouse? After, I guess, he'd been identified as a holdout juror by, by the jury to the judge and that was communicated somehow, or it's undisputed, I guess, to the prosecutor. Is that right? Yes. I mean, even if we, even if we're not convinced this falls within the Remmer classification, what, what's happening here is at least clearly something that falls on the external line of this test. It's, it's a third party. Are you incorporating Maddox in your? Yes. I mean, this, this is, you know, this, this is analogous to the situations that the Supreme Court has found to be an external influence under Maddox. So just so we know what your argument is, is that your argument that this was an external? Yes. Yes. This was clearly an external influence. This is not an internal thing. And it's clear in that situation that the court has to assess the actual impact that this had on a juror. Was, was it, as a factual matter, was it established that the police officer was, in fact, following this juror? Was there any, a finding made about that factual finding? The State court didn't make any specific factual findings on, on the credibility of the juror, but no one, no one has ever said that the juror wasn't, wasn't credible. The, the biggest problem with what the State court is doing here is they're just refusing to conduct this inquiry that they have to conduct for external influences. They need to find out how this influenced the juror instead of doing. My biggest issue with this is where do we draw the line on external contact? I mean, I understand what you're saying, that this, because of the judge's decision, I mean, acknowledging that the police had contact, was following him. The juror, the judge went ahead and made the determination instead of asking the juror whether or not he'd be biased or, I mean, how that might have affected or influenced him. But where do we draw the line? What if a juror says, well, police car drove by my house last night. I'm on jury duty. So I, you know, I'm unnerved by that. And so I think that's, you know, a problem. What, I mean, is that enough for a judge to say, okay, I'm going to treat this as external contact? Or what happens if the juror's at a mall and he sees a police officer in the mall with, you know, you know, 500 other people? Is that, I mean, do we treat that? Is that treated as an external contact? Even if it's treated as external, I'm not saying that just because something happens outside of the courtroom that that means the right is violated. What has to happen is court has to find that it actually influenced the juror. So with some of the examples you're giving, I mean, we know from experience that jurors are very reluctant to impeach their own verdicts. In these cases that I'm citing, you know, there are incidents where things that are objectively would influence the juror, like in Field v. Brown, the 2254 case, you know, someone says, the juror's wife says, I think the defendant raped me. You might think objectively that would influence the juror, but the way the court resolves the issue is they ask the juror and he says, no, that didn't affect me. But when you do have a situation like this, and this is a very unusual circumstance where the juror is writing to the judge two days after the verdict and saying, this incident happened and it absolutely affected me, the clearly established standard is that that is something that actually biased the verdict. The difficulty is that, you know, the courts are not supposed to inquire into the internal deliberations of the jury. How do you put that into the mix of our analysis? Well, I'm not asking for any inquiry into the internal deliberations. The whole point of this claim is that the deliberations have nothing to do with the conviction here. What we're inquiring into is how this extraneous influence biased the juror. And not only can we do that, but there are these numerous Supreme Court cases that say that this is how we have to resolve the claim. But isn't that part of the state of mind of this particular juror that we're not supposed to inquire into? If that were the case, then you could never investigate any type of jury tampering. I mean, if somebody held up a gun to a juror and said, you know, vote this way or else I'm going to shoot you, you couldn't inquire into that. Well, you could inquire into the factual circumstances, but it's difficult for me to accept the premise that we can probe into each juror's mind and ask them, you know, why did you vote the way you did? I don't think you go there. Is that what you're saying? What you have to do is what was the effect on the juror in terms of his – whether he felt he was being intimidated or whatever. And if he says, you know, it was a passing thing, but he doesn't have to say and he can't say, in the – in our actual deliberations, I voted one way or another. Well, that's exactly what he said. That's aligned well with the Supreme – well, we can say – we can read what the Supreme Court has to say on it. I see we're about out of time, but if I could respond to that question. Please. I agree there is – there is authority out there that says you're not supposed to ask the juror the ultimate question, you know, would you have voted, you know, but for this influence. But, you know, you do need to inquire into how it affected the juror, you know, how the juror perceived the embed, whether he felt intimidated and so forth. And here, there's plenty of evidence in the State court record, you know, aside from his statement that he was ultimately influenced, that he was, you know, profoundly affected by this event, that he was disturbed by it, and he felt like there was going to be some retribution if he didn't vote the way that the police wanted him to vote. All right. Let's hear from the government, and then we'll give you a minute for rebuttal. Good morning. My name is Vic Schulze. I'm the Senior Deputy Attorney General with the State. I'd like to start out by thanking the court and the clerk's office specifically. Your courtroom clerk did a wonderful job taking care of the out-of-town attorneys with the problems. I didn't know if I was going to be able to get to town yesterday or get to a hotel  We exchanged cell numbers, and she did a wonderful job. I just would like that on the record. We appreciate that. Well, thank you. Where I disagree with counsel is in the distinction between the externalities and the internalities in this case. Those are separate issues, and I think Tarango is trying to muddle those issues. We know that the U.S. Supreme Court has said that we can't invade the province of the jury by examining the internal deliberations, but we can look at whether or not an external contact took place. And if an external contact took place, what happens? Let's just say if an external contact took place, what's your view of what the Supreme Court says should happen? The U.S. Supreme Court examines the external contact, but in my view, under Tanner and Remmer, we still don't go into the internal workings. The external contact in and of itself can be enough to establish a due process violation. Well, what does that mean? So, I mean, tell me what does that mean? What would have happened? I mean, what should happen when there's an external contact? I think your – I understand your argument that you don't think this was external contact. That's correct. Okay. Let's just assume it was. What should have happened? What should have happened in this case? If an external – In the trial court. I'm sorry? In the trial court. If the trial court had determined this was an external contact. Then the trial court should have found a due process violation. You agree with that? I do agree with that. But the difficulty in this case was – Excuse me. Could I just clarify, without making any further inquiry of the juror, to the effect on the juror? I think – well, I think we're getting into gray area now, because even though I think you can't go into the internal workings, I think you – I think the element of prejudice would have to be shown. But I can't – I don't know that the U.S. Supreme Court in the Tanner case laid out that line explicitly between not invading the province of the jury and asking whether or not the plaintiff in this case or the Petitioner has shown prejudice. But I think – If this had happened before the verdict – if this had happened before the verdict, wouldn't the judge have said, okay, call the – call the juror in here so I can just ask him if whatever he's saying is true? Yes. I think she would have. Absolutely. It would have, right? I think she would have had a hearing. I think she would have had a hearing. So why wouldn't that same obligation have occurred here post-verdict? It did occur. We had a lengthy evidentiary hearing with four witnesses. Well, no. I know. To determine what had happened. But the question of – I'm sorry, juror number two, do whatever happened affect your ability to be fair and impartial? That's what never happened here, right? Correct? That didn't happen here. Specifically, what did not happen? The judge asking the juror, did that affect your ability to be fair and impartial? We didn't get to that. You're correct, because we didn't get to that point because what Judge Leavitt held was that the – after the four – the prosecutor, the defense attorney, the witness, there were four people who testified in this case. And what Judge Leavitt said at page – I think it's 2012 of the EOR – what Judge Leavitt said was that the evidence here on a contact is ambiguous. The Nevada Supreme Court in the appeal at EOR 38 said it was dubious that there even was a contact. All that – the case law is pretty clear. It just has to allege an external contact for that process to kick in. And the process did kick in, and there was an evidentiary hearing, and they never established a contact. The process, though, doesn't it include when you determine external – if you allege an external contact, then you have to, it seems like, you know, have the hearing that he had, but then ask the juror, did that affect your ability to be fair and impartial, or give the government an opportunity to rebut? I agree with you if the Petitioner proves a contact, and there was no contact in this case. You can't get to Step 2. Prove or allege. You can't get to Step 2 until there's been a showing on Step 1 that there was a contact, that there was, objectively speaking, there was a contact with this juror. Let me go back to that evidentiary hearing very briefly and point one point out. After you do that, I'd like to hear an explanation for why a 7-mile follow on tailgating is not an external contact. I'd be happy to. At the close of that hearing on the EOR 2012, Ms. Weckerle for the DA's office points out they never established the identification of the juror ever left the courtroom. Keep in mind that detective – the theory behind this case is the prosecutor's on the telephone. He's talking to Vaccaro, the lead detective, and he identifies a holdout. Both the prosecutor and Vaccaro testified in the evidentiary hearing. They did not know there was a holdout. All they knew at that point in time, until Sijis, the defense attorney, filed his motion for new trial, was that there was a readback dealing with DNA evidence. That the argument at the close of the hearing in 2012 was they never – they never – did the juror ever left the courtroom. But did they know it was juror number 2? The argument was they never – the identification never left the courtroom. But just ask me, did they know it was juror number 2? According to the testimony at the evidentiary hearing, no. My interpretation is they did not. Vaccaro, because Vaccaro – He identified as juror number 2. Not as a holdout. Vaccaro testified that he did not know there was even a holdout, therefore, he couldn't know that there was an issue. The prosecutor said the exact same thing. They didn't – they knew there was a readback. They did not know there was a holdout. Cristalli says, and he's the defense attorney at the hearing, I disagree that I need to establish that. What he's saying is I don't have to prove that there's an external conflict. I only have to show that in the subjective mind of one of the jurors, there was an influence from a non-contact. And there is no case from this Court or Tanner or Remmer from the U.S. Supreme Court that holds that the subjective conclusion based on a non-contact somehow can be converted into a contact. You still have to have a contact. All the cases cited in both briefs, both the original briefing and the supplemental briefing that dealt with this issue, talked about actual face-to-face contact with the exception of that contact where there was a telephone call, but most of those were somebody being approached at the courthouse, they're being approached at home in one case. Somebody actually calls somebody, and I guess we call that a mouth-to-ear contact, but it's an actual contact. These facts have never made it to the U.S. Supreme Court, and what the district court below held under 2254D was obviously, and you know the standard in state habeas, in federal habeas by a state case, there has to be a U.S. Supreme Court decision directly on point. There isn't one on this point. Therefore, Tarango can't win this case under 2254D, because if there's no case on point, it's impossible for the state court to have been wrong. I disagree. I agree with Judge Rawlinson, and I disagree with Tarango in the argument here that we dissect what the state court did, even if it did not violate U.S. Supreme Court law. The U.S. Supreme Court has held the opposite repeatedly, that if there is no direct conflict with the U.S. Supreme Court case, the case ends. Now, getting back to Judge Fischer's question on the contact, we're a city of 2 million people, as Judge Rawlinson can tell you, and this was rush hour at 7.50 in the morning. Am I surprised that there was a police car on the freeway behind this guy for, what, six minutes? Absolutely not. Any reason why this cop would be driving downtown, I can give you a thousand reasons. Might have been subpoenaed to justice court. Could have been subpoenaed to Federal court. Could have been seen subpoenaed to family court or district court. I would also point out, want to point out one kind of core issue. But you acknowledge, I guess I want to make sure, that the district court judge did find that the police car followed him. There's a – he says it specifically. I want to hear a few of your thoughts. I don't find a – I don't see a finding. What she said was he didn't – Tarango didn't meet his burden of proof to show there was a contact. We've got to keep something in mind on the use of this word following. Following implies an intent. That he had a car behind. I don't think anybody – I don't think – Judge, I don't think – I don't disagree with the allegation that there was a police car behind him. But I think the use of the word following is a loaded term, because it implies that the car was stalking him. Keep in mind the impossibility of this entire context. That's fair. That's fair. I'm just – because the – No, I understand. The juror is saying that. I understand. The juror is subjectively concluding again and again, there's this car behind me and he's getting all upset about this stuff, and he's going on and on about how he's being intimidated. How is it possible that the cop knew where he was? Excuse me. Excuse me, counsel. Yes, ma'am. The Nevada Supreme Court did assume that juror number two was followed, used that term, and said that it was not clear whether being followed by a marked car qualifies as a communication. I agree with that. So the term followed was used by the state court. The term followed was used, but they're not using that term in the sense that there was an intentional stalking. They're using that term in the sense that there was a car behind him. And there's a – because keep something in mind. This car couldn't have been that close because Tarango couldn't even identify the driver based on race or gender, and ultimately, I'm not convinced in reading, and this gets into a subjective interpretation. Since we're toward the end, I understand, and you've made your case in your brief in here today, that you disagree that this was an external contact. It's what? You disagree.  I do. But you've also stated that if it was an external contact, then it should have been treated differently, correct? If there had been a contact and this juror could no longer be fair, then there would be an issue, yes. And to determine whether or not the juror could no longer be fair, he would have to be asked whether he could no longer be fair, correct? After he established the existence of an external contact, and that's where the case falls apart. So if the panel disagrees with you regarding whether or not this or disagrees with the Supreme Court of Nevada as to whether this was an external contact, you would agree that the outcome would be different. I do not agree with that because under 2254, a state court determination under 2254D can be wrong. It simply cannot be objectively unreasonable. So this ultimately is a case where the burdens are going to control. Even if you disagree with what the state court did and say, you know, I would have done it differently if I had been on the state Supreme Court or if I had been in Judge Levitt's shoes, I would not have found what she did. That's not enough to grant 2254 relief. It has to be objectively unreasonable. And in this case, I don't think it was. That's a fair point. Yes. Thank you very much. All right. Thank you. Rebuttal. We'll give you one minute. Thank you. The Supreme Court's clearly established case law doesn't support this effort to parse what an external contact is. It's clear that it doesn't need to be intentional and that it doesn't even need to relate to the trial at all to trigger this inquiry. What the cases are concerned with is ultimately the effect that this out-of-court influence has on the juror, and that's exactly what the state courts failed to do when they were evaluating this claim. I guess what I would say is, even if there is some bona fide question here as to, you know, whether this is, you know, an external contact or whether this actually caused the juror, you know, to be biased, you know, what the remedy should be here is an evidentiary hearing, because the problem is the state courts didn't evaluate the claim the right way to begin with. I think it's clear from this record, you know, that this was an external contact, and I think it's clear that it actually biased the juror. But even if there was some question about that, because the proper inquiry wasn't done in the state courts, it should be done in the federal court, the judge, you can apply the right standard. So as counsel for the state reminds us, the Supreme Court has told us repeatedly and emphatically that we should not second-guess the state courts. Would this be second-guessing the state court if we remanded for an evidentiary hearing? No. If we did that, we would be saying, what's already clear from their order is that they are applying a standard that is contrary to clearly established federal law. So under the D-1 standard, you know, you're allowed to second-guess a state court when they're not applying the correct standard to begin with. All right. Any other questions? All right. Thank you. Thank you, both counsel, to the case well argued. The case just submitted. The case just argued and submitted for decision by the Court. The next case on calendar for argument is Sethi v. Seegate.
judges: Fisher, Rawlinson, Murguia